**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | |
|---|---|
| FREDDIE WILLIAMS, | : |
| Plaintiff, | : |
| VS. | : |
| | : **1 : 10-CV-87 (WLS)** |
| Mr. RALLEY, *et al.*, | : |
| Defendants. | : |

## ORDER AND RECOMMENDATION

The Plaintiff, who is proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 on July 14, 2010, raising allegations of excessive use of force by Defendants. (Doc. 3). Presently pending in this action are Defendants'[1] Motion for Summary Judgment, and Plaintiff's Motion to Amend. (Docs. 24, 31).

*Defendants' Motion for Summary Judgment (Doc. 24)*

**Background**

Defendants filed their Motion for Summary Judgment on February 23, 2011. On February 24, 2011, the Court notified the Plaintiff of the filing of the Defendants' Motion for Summary Judgment, advised him of his obligations under the law, and directed him to respond thereto within thirty (30) days of the date of the Court's Order. (Doc. 25). Plaintiff filed responses to Defendants' Motion for Summary Judgment on April 1, 2011 and April 20, 2011. (Docs. 27, 30).

---

[1] Currently pending before the U.S. District Judge assigned to this case is a Report and Recommendation by the undersigned recommending the dismissal of Defendants "John Does", Ralley, Allen, and Kimble. (Doc. 5). As this Report and Recommendation is still pending, these Defendants have not been dismissed from the case. This Motion for Summary Judgment was filed on behalf of the Defendants upon whom service was ordered, Defendants Dawsey, Johnson, Harris, Brown, Lumpkin, White, Alexander, and West.

In his Complaint, Plaintiff alleges that Defendants used excessive force after Plaintiff was subdued following his assault on two officers. (Doc. 3-2). Plaintiff asserts that Defendants kicked him in his face, head, ribs, and stomach while he was restrained in handcuffs.

**Standard of Review**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1). All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

As the party moving for summary judgment, Defendants have the initial burden to demonstrate that no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The movant "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying those portions of the record, including pleadings, discovery materials, and affidavits, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and

2

supporting materials –including the facts considered undisputed – show that the movant is entitled to it". Fed R. Civ. P. 56(e)(3).

**Factual Evidence**

*Defendants' Evidence*

In arguing that they are entitled to the entry of summary judgment in regard to Plaintiff's Complaint, Defendants have submitted affidavits from Defendants and from various prison officials, Plaintiff's deposition testimony, portions of Plaintiff's prison medical records, and photographs of Plaintiff following the use of force incident. (Doc. 24).

Defendants' affidavits generally show that on August 12, 2008, while supervising Plaintiff at the Phoebe Putn[ey] Hospital, Defendant Dawsey observed Plaintiff openly masturbating, which is against prison rules. (Doc. 24-3, Dawsey Affidavit, ¶ 4). Defendant Dawsey's affidavit shows that she phoned Defendant Brown to notify him of the situation, and Defendant Brown instructed Defendant Dawsey to issue Plaintiff a disciplinary report upon their return to the prison. (*Id.*).

Upon Plaintiff's return to the prison, Defendants Dawsey and Johnson walked Plaintiff to medical, as all prisoners must go through medical after returning from an outside medical appointment. (*Id.* at ¶¶ 7, 8). According to Defendants Dawsey and Johnson, Plaintiff overheard on the radio that a segregation cell was ready for Plaintiff, and then Plaintiff became upset and threatened Defendant Dawsey. (*Id.* at ¶ 9; Doc. 24-4, Johnson Affidavit, ¶ 6).

It is undisputed that Plaintiff threatened to kill Defendant Dawsey after he was released from prison, and then spit in Defendant Dawsey's face. (Docs. 24-3, Dawsey Affidavit, ¶ 11; 24-16,Williams Depo. p. 27, ll. 12-16). At this point, Defendant Dawsey states that Plaintiff swung his arms in an attempt to strike her but missed, and then kicked Defendant Dawsey in the stomach. (Doc. 24-3, Dawsey Affidavit, ¶ 11).

3

Upon hearing commotion in the hallway, Defendant Johnson stepped out to see what was happening and Plaintiff kicked Defendant Johnson in the groin. (Docs. 24-16,Williams Depo. p. 27, ll.16-21; 24-4, Johnson Affidavit, ¶ 7). Defendants Dawsey and Johnson began issuing verbal commands telling Plaintiff to stop his aggressive conduct and attempted to grab Plaintiff's arms; however, Plaintiff continued to resist and attempted to punch these two Defendants. (Docs. 24-3, Dawsey Affidavit, ¶¶ 13, 14; 24-4, Johnson Affidavit, ¶ 8). Non-party Nurse Justice testified she radioed that an officer had been assaulted and needed assistance. (Doc. 24-12, Justice Affidavit, ¶ 10). At this point, Defendant Correctional Emergency Response Team ("CERT") Officer Harris arrived and assisted Defendant Johnson in taking Plaintiff to the ground. (Docs. 24-4, Johnson Affidavit, ¶ 10; 24-5, Harris Affidavit, ¶ 5). Plaintiff continued to struggle once on the ground, and Defendants Johnson and Harris used hands-on-force to control Plaintiff and place him in restraints. (Doc. 24-5, Harris Affidavit, ¶¶ 6-7). Once Plaintiff was restrained, Defendants Harris and CERT Officer Alexander lifted Plaintiff to his feet and took him to a medical exam room for a use of force assessment. (*Id.* at ¶ 6; Doc. 24-6, Alexander Affidavit, ¶ 5).

Defendant Lieutenant Brown arrived after Defendant Harris and issued verbal orders for Plaintiff to stop resisting, yet did not make any physical contact with Plaintiff. (Doc. 24-7, Brown Affidavit, ¶¶ 6, 10). By the time Defendants Sergeant Lumpkin and Officer West arrived, the situation was under control, and neither Defendant made physical contact with Plaintiff. (Docs. 24-10, Lumpkin Affidavit, ¶¶ 4, 6; 24-11, West Affidavit, ¶¶ 5–7). According to Defendants' evidence, Defendant CERT Officer White was not working at the time of the incident, and therefore, did not use excessive force against Plaintiff. (Doc. 24-8; White Affidavit).

*Plaintiff's Evidence*

In response to the Defendants' summary judgment motion, the Plaintiff submitted a declaration

of the facts of his claim, which he signed under the designation "under penalty of perjury", copies of portions of his prison medical records, copies of disciplinary reports, and a copy of the Georgia Department of Corrections Standard Operating Procedures handbook. (Docs. 27, 30). The record also contains Plaintiff's sworn deposition testimony, submitted by the Defendants, with certain sections specifically pointed to and identified by Defendants in support of their summary judgment motion. (Docs. 24-16 – 24-17, Williams Depo.). Although the Plaintiff has neither incorporated this testimony by reference nor pointed to relevant portions of the testimony in responding to the Defendants' Motion for Summary Judgment, Rule 56 clearly allows for the Court's consideration of the entire record when ruling on a motion for summary judgment. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The notes explaining the amendment further state that "a court may consider record materials not called to its attention by the parties." *Id.* at hist. n. 2010 Amendments.

The Eleventh Circuit has also recognized that courts must consider the record as a whole in ruling on motions for summary judgment. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) ("[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial") (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) ("[i]n opposing summary judgment, the nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole"). The Court is mindful, as well, of the Plaintiff's *pro se* prisoner status, which the Eleventh Circuit has noted entitles the Plaintiff's pleadings and briefs to a more liberal construction. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990); *see also Keith v. Stewart*, 2006 WL 2298004, n. 1 (N.D. Ga. Aug. 8, 2006) (courts are reluctant to require a *pro se* prisoner to rely on more evidence than his pleadings in response to motions for summary judgment).

5

Thus, the Plaintiff's sworn deposition testimony is properly considered herein as part of the record as a whole and in opposition to the Defendants' Motion for Summary Judgment. Plaintiff's deposition testimony offers evidence that Plaintiff was handcuffed behind his back during the entire incident. (*See* Doc. 24-16, Williams Depo, p. 21, ll. 10-23). Plaintiff states that after he threatened to kill Defendant Officer Dawsey and spit in her face, Defendant Dawsey hit Plaintiff in the face. (*Id.* at pp. 25, l. 25 – p. 26, l. 3, p. 27, ll. 12-16). After Plaintiff was hit in the face, he agrees that he kicked Defendant Dawsey in the stomach and Defendant Johnson in the groin. (*Id.* at p. 27, ll. 16-21). After Defendant Dawsey radioed the code for "officer in need of assistance," Plaintiff laid face down on the ground. (*Id.* at p. 30, ll. 13-14).

Plaintiff also testifies that Defendants Harris, Alexander, White, Brown, Lumpkin, and West came to the prison's medical area after responding to the radio call and, along with Dawsey and Johnson, began kicking and stomping on Plaintiff for five to eight minutes after Plaintiff was subdued. (*Id.* at p. 31, ll. 2-6). Plaintiff maintains that, after Defendant Dawsey radioed for officer assistance, Plaintiff laid down and had stopped resisting before any officers arrived to assist. (Docs. 24-16 – 24-17, Williams Depo. p. 30, ll. 13-14, p. 43, ll. 10-11; Doc. 30). Further, Plaintiff states that when Defendants responded Plaintiff was "[o]n the floor, handcuffed behind [his] back[.]" (*Id.* at p. 43, ll. 18-19). As a result of the attack, Plaintiff alleges that he received lacerations to his face, head, lips, mouth, a separated shoulder, and lost a tooth. (Doc. 30).

## Discussion

The Eighth Amendment forbids cruel and unusual punishment, and this prohibition governs "the treatment a prisoner receives in prison and conditions under which he is confined." *Farrow v. West*, 320 F.3d 1235, 1242 (11th Cir. 2003). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is

that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). "[A]nalysis of an Eighth Amendment excessive force claim is contextual and requires that many factors be considered: 'the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.'" *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996) (quoting *Hudson*, 503 U.S. at 5).

To establish a claim for excessive force, the Plaintiff must show that (1) the Defendants acted with a malicious and sadistic purpose to inflict harm and (2) that a more than *de minimis* injury resulted. *Fischer v. Ellegood*, 238 Fed. Appx. 428, 432 (11th Cir. 2007); *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002). However, "[t]he 'core judicial inquiry' . . . [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010) (quoting *Hudson*, 503 U.S. at 7). When the conduct in question resulted from an officer attempting to restore control after an inmate disturbance, an Eighth Amendment claim arises *only* if the measure taken "inflicted unnecessary and wanton pain and suffering" caused by force used "maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.." *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1500 (11th Cir. 1985).

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247-48 (1986)) (emphasis in original). "When opposing parties tell

7

two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* However, if the record contains only circumstantial evidence that simply shows one party swearing to one set of facts and the other party swearing to another set of facts, then the motion for summary judgment should be denied. *Skelly v. Okaloosa County Board of County Commissioners*, 2011 WL 539053, *2 (11th Cir. 2011).

Defendants contend that they could not have used excessive force because the amount of force used was necessary to regain positive control of Plaintiff. (Doc. 24-2). Plaintiff admits that he violated prison rules by attacking an officer, yet states that he did not resist when the Defendants restrained him, and thus, Defendants "went overboard." (Doc. 24-17, Williams Depo. p. 39, l. 25 – p. 40, l. 5). Accordingly, the critical issue in this case is whether Defendants continued to use force after Plaintiff had stopped resisting and was subdued.

*Necessary Use of Force*

Defendants maintain that only Defendants Dawsey, Johnson, and Harris used hands-on-force to gain control of Plaintiff and to prevent him from further harming any prison employees or inmates. (Doc. 24-2). Plaintiff, however, states that all Defendants kicked him for five to eight minutes after he stopped resisting, and thus, the force used was excessive. (Doc. 30).

Defendants have submitted four affidavits that state Defendants Dawsey, Johnson, and Harris were the only Defendants to use force on Plaintiff and they only used the force necessary to regain positive control of Plaintiff. (Docs. 24-3, Dawsey Affidavit; 24-4, Johnson Affidavit; 24-5; Harris Affidavit; 24-7, Brown Affidavit). Additionally, Defendants provided seven affidavits that state Plaintiff was not kicked, stomped, or beaten at any point during the incident. (*See* Docs. 24-3 – 24-7; 24-10; 24-11). In order to control Plaintiff, several Defendants agree that Defendants Dawsey,

8

Johnson, and Harris were required to use hands-on-force. (Docs. 24-3, Dawsey Affidavit; 24-4, Johnson Affidavit; 24-5; Harris Affidavit; 24-7, Brown Affidavit). Defendants' testimony shows that Johnson and Harris were able to regain positive control and apply handcuffs and leg restraints to Plaintiff. (*Id.*). Defendants Dawsey, Johnson, Harris, and Brown's affidavits appear to assert that Plaintiff was not handcuffed when the assault on the officers occurred.

Plaintiff's evidence directly contradicts the evidence of Defendants. Plaintiff states that he was handcuffed during the alleged attack and thus was not able to resist against Defendant Johnson. (Docs. 24-16 – 24-17, Williams Depo. p. 29-30). In Plaintiff's deposition, he states that as soon as the radio call was made requesting officer assistance, Plaintiff laid down on the ground and stopped resisting. (*Id.* at p. 30, ll. 13-14). Plaintiff also states that when the remaining Defendants arrived to assist Defendants Dawsey and Johnson, Plaintiff was laying on his stomach, with his arms handcuffed behind his back. (*Id.* at p. 31, l. 3). Plaintiff's evidence shows that once Plaintiff laid down he was no longer resisting the officers. (*Id.* at p. 43, ll. 10-11; Doc. 30, Williams Declaration, ¶¶ L, N). Plaintiff also testified that "[Defendants] had an option to take me downtown, file charges for spitting in her face, kicking her, kicking him. It's called assault on a staff. That's a charge. They had that option. They went overboard." (*Id.* at p. 39, l. 25 – p. 40, l. 5).

The Court must give a "wide range of deference to prison officials acting to preserve discipline and security." *Bennett v. Parker*, 898 F.3d 1530, 1533 (11th Cir. 1990). Deference must also be given to prison officials who are required to make immediate decisions at the scene of a disturbance. *Id.* However, "once the necessity for the application of force ceases, any continued use of harmful force can be a violation of the Eighth Amendment, and any abuse directed at a prisoner after he terminates his resistance to authority is an Eighth Amendment violation." *Williams v. Burton*, 943 F.2d 1572,1576 (11th Cir. 1991); *see also Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008) ("When

jailers continue to use substantial force against a prisoner who has clearly stopped resisting - whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated - that use of force is excessive.").

Herein, it is clear that Defendants should be given a large range of deference regarding the use of force necessary to control Plaintiff. It is undisputed that Plaintiff created a disturbance in the jail and hands-on-force was necessary. However, there is evidence that shows Plaintiff stopped resisting, yet was still assaulted by Defendants and, at that point, any use of substantial force became excessive and violated Plaintiff's Eighth Amendment rights. Based on Defendants' affidavits and Plaintiff's deposition, there is a factual dispute as to whether Defendants continued to use force after Plaintiff stopped resisting. Thus, the evidence creates a question of fact that must be decided by a jury. *See Anderson v. Tyus*, 2009 WL 903592, *8 (N.D. Fla. 2009) (denying motion for summary judgment where plaintiff provided evidence that he was beaten after he stopped resisting).

*Plaintiff's Injuries*

Defendants maintain that, in addition to the fact that the force used was necessary, Plaintiff's allegations against Defendants Alexander, Brown, Lumpkin, and West are "belied by [Plaintiff's] own medical records". (Doc. 24-2). Defendants Brown, Lumpkin, and West provided affidavits stating that they were merely present in the medical department but did not make any physical contact with Plaintiff. (Docs. 24-7, Brown Affidavit; 24-10, Lumpkin Affidavit; 24-11, West Affidavit). Defendant Alexander testified that his only physical contact with Plaintiff was when Defendant Alexander lifted Plaintiff to his feet and escorted him into medical. (Doc. 24-6, Alexander Affidavit). Plaintiff's evidence states that each of these four Defendants used excessive force by kicking and stomping on him after he had laid down on the ground. (*See* Docs. 24-16 – 24-17, Williams Depo).

Although the extent of any injury is not alone dispositive of an excessive force case, it is "one

factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321). "The extent of the injury may . . . provide some indication of the amount of force applied." *Wilkins*, 130 S.Ct. at 1178. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* at 1178-79.

A beating that results only in minor bruising and swelling can constitute excessive force, and evidence of minor injuries is sufficient for an excessive force claim to survive a motion for summary judgment. *See Hudson*, 503 U.S. at 4 (excessive force was used when the inmate suffered minor bruises and swelling of his face, mouth, and lip, and the blows loosened some of the inmate's teeth and cracked his partial dental plate); *Borroto v. McDonald*, 2006 WL 2786152 (N.D. Fl. Sept. 26, 2006) (handcuffing a prisoner and slamming his head into the floor for no legitimate purpose violated the Eighth Amendment, even though it only caused a few bruises); *Gomez v. Chandler*, 163 F.3d 921, 924-25 (5th Cir. 1999) (denying summary judgment when plaintiff allegedly suffered cuts, scrapes, and contusions to the face, head and body).

Plaintiff's injuries are sufficient to show excessive force could have been used. Immediately following the use of force, non-party Nurse Justice observed that Plaintiff had two one-centimeter scratches on the back of his head, he lost a tooth, and he had an abrasion over his left eye. (Doc. 24-13). Nurse Justice completed the use of force assessment at approximately 8:50 p.m., and around 10:30 p.m., Nurse Justice again saw Plaintiff due to complaints of left arm pain. (Doc. 24-12, Justice Affidavit ¶ 15). The next morning Plaintiff was again seen by medical and complained of pain in his left shoulder, his left side, and his ribs. (*Id.* at ¶ 16). Medical records provided by Plaintiff show that on August 15, 2008, three days after the alleged excessive use of force, an x-ray showed that

11

Plaintiff's shoulder was possibly separated. (Doc. 27-1).

Along with the use of force assessment and a medical chart, Defendants provided photographs of the right side of Plaintiff's face following the use of force incident to show that Plaintiff's injuries were indicative of the use of force described by Defendants, not of the beating described by Plaintiff. (Doc. 24-15). The photographs, however, only show the right side of Plaintiff's face, and appear to show a bloody, swollen lip, and a bump over Plaintiff's right eye. Defendants have not submitted photographs of the left side of Plaintiff's face or mouth, the inside of Plaintiff's mouth, the back of Plaintiff's head, or any photographs of Plaintiff's shoulder or torso, which is where several of the alleged injuries were located. Thus, the photographs do not establish that Defendants' version of the event is indisputable.

Simply because Plaintiff may not have been severely injured does not mean that "[P]laintiff's testimony is so fantastic or internally inconsistent that no reasonable jury could credit it." *Skelly*, 2011 WL 539053 at *2; *see also U.S. v. Davis*, 809 F.2d 1509, 1513 (11th Cir. 1987) (finding that when testimony "is so fantastic, so internally consistent, or so speculative that it had no probative value," the court can grant summary judgment). Plaintiff's medical records sufficiently corroborate Plaintiff's version of the event. Therefore, the evidence of Plaintiff's injuries does not discredit Plaintiff's allegations or his testimony.

The present action is a classic case of Plaintiff swearing to one set of facts and Defendants swearing to another set of facts. *See Skelly*, 2011 WL 539053. Plaintiff testified that as soon as Defendant Dawsey radioed for assistance, Plaintiff laid down on the ground and stopped resisting. Plaintiff also testified that he was handcuffed the entire time, making him much less of a threat. Furthermore, as stated above, the medical records show injuries to Plaintiff that are sufficient to show excessive force could have been used.

Although Defendants' affidavits challenge Plaintiff's version of events and claim that

Defendants did not use excessive force on Plaintiff, the ultimate resolution of this issue depends on a credibility determination properly decided by the trier of fact. Genuine issues of material fact remain as to the amount of force used, whether force was used after it was no longer necessary, and whether Defendants acted "maliciously and sadistically" to cause harm. Accordingly, it is the recommendation of the undersigned that Defendants' Motion for Summary Judgment be **DENIED**.

*Defendant White*

Plaintiff testified that Defendant White was present during the alleged use of excessive force, and kicked and stomped Plaintiff "a lot" during the incident. (Doc. 24-16, Williams Depo. p. 30, p. 38, ll. 1-11). However, Defendant White's affidavit states that on August 12, 2008, Defendant White "worked from 6:45 a.m. to 4:30 p.m.[; t]herefore [he] was not present" at Autry State Prison during the use of force incident involving Plaintiff, which occurred between 8:30 and 9:00 p.m. (Doc. 24-8, White Affidavit, ¶ 4). Defendant White testified that he was not aware of the incident until he arrived at work the next morning. (*Id.*). To support his affidavit, Defendant White submitted his time sheet dated July 18, 2008 through August 15, 2008, which appears to show that he was not on duty when the alleged excessive use of force occurred. (Doc. 24-9).

While there appears to be no Eleventh Circuit authority as to the issue presented here, the Second and Third Circuits have addressed this issue. In *Johnson v. Brown*, 2011 WL 1097864 (N.D.N.Y. March 9, 2011), the plaintiff alleged that the defendants used excessive force against the plaintiff. In support of his assertion that he did not use excessive force, a defendant provided an affidavit and his time sheet showing that he was on vacation the day of the alleged incident. *Id.* at *7. The court granted summary judgment in favor of this defendant because the court found the plaintiff's testimony was inconsistent, self-contradictory, incomplete, and totally uncorroborated, and because the defendant's affidavit and time sheet showed the defendant was out of town during the alleged use of

13

force. *Id.*

*Johnson* is distinguishable from the case at hand. Herein, Plaintiff's testimony is not inconsistent, self-contradictory, or incomplete. Plaintiff has consistently provided the same testimony throughout his Complaint, deposition, and Response to Defendants' Motion for Summary Judgment, and as discussed above, Plaintiff's testimony is corroborated, in part, by the medical records. Furthermore, Defendant White's time sheet shows that he was at Autry State Prison on the day of the incident, and thus, not out of town.

A Third Circuit district court denied summary judgment when addressing this time sheet issue. In *Monaco v. City of Camden*, 2007 WL 1470133 (D.N.J. May 18, 2007), the plaintiff submitted his deposition and an eyewitness's testimony, which showed that the defendants were present when excessive force was used against the plaintiff. The defendants submitted testimony and documents, including time sheets, to show that they were not working at the named location on the night of the incident. *Id.* at *2. However, one defendant admitted that certain documents produced by the City of Camden were not always accurate. *Id.* at *3, n. 7. Finding that a jury could reasonably conclude that the defendants' testimonies and documents were unreliable, the court denied summary judgment. *Id.* at *3.

Herein, similarly to *Monaco*, Plaintiff and Defendant White have both produced testimony that contradicts one another. While Defendant White has produced his time sheet, he has not provided any testimony from a records custodian to indicate that the time sheet is accurate. Moreover, Defendant White's affidavit states that he was working from 6:45 a.m. to 4:30 p.m.; however, the time sheet does not indicate "a.m." or "p.m.". (Docs. 24-8, White Affidavit, ¶4; 24-9). Even if the time sheet is accurate, it only establishes that Defendant White was not "on the clock" at the time of the subject incident; it does not establish that he was not present.

14

In contrast to Defendant White's evidence, Plaintiff testified that Defendant White was present during the alleged excessive use of force. (Docs. 24-16 – 24-17, Williams Depo.). Furthermore, Defendant White's counsel asked Plaintiff if he was sure that Defendant White was there, and Plaintiff responded, "Yeah. I'm sure." (Doc. 24-16, Williams Depo. p. 38, ll. 17-18).

Defendant White's time sheet provides circumstantial evidence to support his affidavit; however, this evidence directly contradicts Plaintiff's testimony. The ultimate resolution of this issue depends on a credibility determination properly decided by a jury. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993) ("The court must avoid weighing conflicting evidence or making credibility determinations."). As genuine issues of material fact remain as to whether Defendant White was present at Autry State Prison on the evening of August 12, 2008, it is the recommendation of the undersigned that the Motion for Summary Judgment regarding the claims against Defendant White be **DENIED.**

**Qualified Immunity**

Defendants also maintain that they are entitled to the defense of qualified immunity. Qualified immunity "offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Oliver v. Fiorino*, 586 F.3d 898, 904 (11th Cir. 2009). "Under the qualified immunity standard recently rearticulated by the Supreme Court in *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808 (2009), we are obliged to grant qualified immunity to a [defendant] officer unless the plaintiff can demonstrate: first, that the facts when viewed in a light most favorable to the plaintiff establish a constitutional violation; and, second, that the illegality of the officer's actions was clearly established at the time of the incident." *Id.* at 905.

"For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a

reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.'" *Hope v. Pelzer*, 122 S. Ct. 2508, 2515 (2002) (quoting *Anderson v. Creighton*, 107 S. Ct. 3043 (1987)). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances. . . Accordingly, . . . the salient question . . . is whether the state of the law [at the time of the events giving rise to the cause of action] gave [the defendants] fair warning that their [actions were] unconstitutional." *Id.* at 2516.

A defense of qualified immunity is generally unavailable in cases involving excessive force because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation. *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citing *Hudson*, 503 U.S. 1); *see also Fennel*, 559 F.3d at 1216-17 ("For claims of excessive force in violation of the Eighth or Fourteenth Amendments, however, a plaintiff can overcome a defense of qualified immunity by showing only the first prong, that his Eighth or Fourteenth amendment rights have been violated."). As the Court has determined that there is a genuine issue of material fact regarding Plaintiff's claims of excessive force, qualified immunity must be **DENIED** at the summary judgment stage.

## Conclusion

As genuine issues of material fact remain as to Plaintiff's claims against Defendants, it is the recommendation of the undersigned that Defendants' Motion for Summary Judgment be **DENIED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to the recommendations contained herein with the Honorable W. Louis Sands, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

*Motion to Amend (Doc. 31)*

In Plaintiff's Motion to Amend, Plaintiff does not set forth any new claims but appears to be requesting that the Court order that polygraph tests be administered to non-party Nurse Rhonda Justice, Plaintiff, and all Defendants. Defendants have filed a response to Plaintiff's Motion requesting the Court deny the Motion because polygraph tests will not likely lead to admissible evidence, nor was the Motion filed within the discovery period. (Doc. 32). As Plaintiff appears to have mis-named his Motion, the Court will view this Motion as a request for discovery.

A party to a case "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.* Plaintiff has not shown good cause because he has not provided the Court with an explanation as to how the polygraph tests will provide either admissible evidence or relevant information reasonably calculated to lead to the discovery of admissible evidence.

Furthermore, discovery in this case was set to expire ninety (90) days from the date a response to Plaintiff's Complaint was filed. (Doc. 4). Defendants filed an Answer on October 12, 2010, thus discovery expired on or about January 10, 2011. (Doc. 16). Plaintiff filed this Motion on May 19, 2011, which was more than four months after the discovery period ended. Accordingly, Plaintiff's Motion requesting the Court to order polygraph tests is hereby **DENIED**.

**SO ORDERED AND RECOMMENDED**, this 9th day of August, 2011.

s/ ***THOMAS Q. LANGSTAFF***

**UNITED STATES MAGISTRATE JUDGE**

llf